UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDDY RAFAEL MARTINEZ-CASTILLO,

                          Petitioner,

-against-

UNITED STATES OF AMERICA,

                          Defendant.

17-cv-00762 (NSR)

(Related Criminal Action:
Case No. 16-cr-368 (NSR))

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

On January 30, 2017, Petitioner Eddy Rafael Martinez-Castillo ("Petitioner" or "Martinez-Castillo") commenced this action under: 28 U.S.C. § 2255 and U.S.C. § 3582(c)(2) challenging the validity of the Court's decision to sentence him to 58 months of imprisonment for his violation of 21 U.S.C. § (b)(1)(c). Petitioner argues that he should receive a reduced sentence based on: 1) United States Sentencing Guidelines ("U.S.S.G.") Amendment 782 not being properly applied in his sentencing and 2) because he was denied participation in a drug program known as the Residential Drug Abuse Program ("RDAP"). The Government opposes the Motion. For the following reasons, Petitioner's Motion is DENIED.

## BACKGROUND

**The Offense**

In September 2015, the Drug Enforcement Agency ("DEA") and Yonkers Police Department ("YPD") began investigating heroin trafficking around Midland Avenue, #4B in Yonkers, NY (the "Apartment"). Officers placed a hidden surveillance camera outside the Apartment, which on September 23, 2015, provided them with real-time images. (PSR ¶ 11.)

1

On December 12, 2015, officers conducting surveillance of the Apartment saw Martinez-Castillo and a companion, Antonio Poueriet, exit the Apartment and enter a vehicle. The officers followed the vehicle towards Manhattan but lost them soon thereafter. (PSR ¶ 12.) Later that day, the camera recorded Martinez-Castillo and Emmanuel J. Taylor entering the Apartment. Poueriet came back shortly after. Martinez-Castillo and Taylor then exited while carrying suspicious plastic bags. A YPD officer approached and asked to check the bags. The bags contained a hard brick of something wrapped by clothes. Martinez-Castillo and Taylor were then arrested. The brick turned out to be a large sum of money that was found to be worth around $63,000. (*Id*. ¶ 13.)

Martinez-Castillo then told one officer that his friend was in the Apartment, and he provided the officer with the key. The officers went up to the apartment with Martinez-Castillo and encountered Poueriet. Poueriet was then arrested. The officers then searched the apartment and found an additional $5,000 (*Id*. ¶ 14.) Following Poueriet's arrest, Poueriet explained that the Apartment was part of a heroin trafficking operation. (*Id*. ¶ 15.)

**Procedural History**

On July 14, 2016, Petitioner pleaded guilty to Count 1 of the Indictment for conspiring to distribute and possessing with intent to distribute heroin. On November 17, 2016, this Court sentenced him to 58 months' imprisonment followed by 2 years of probation. (*Id*. ¶ 5.)

On January 30, 2017, Petitioner filed his first motion to vacate. (Criminal Docket,16-cr-368 (NSR) (S.D.N.Y. Mar. 21, 2017), ("CR"), ECF No. 54, Civil Docket 17-cv-762 (NSR) (S.D.N.Y. Mar. 30, 2017), ("CV"), ECF No. 1.) On March 21, 2017 and March 30, 2017, Petitioner filed amended motions to vacate on both the criminal and civil dockets. (*See* CR, ECF No. 57; CV, ECF No. 6). The Government responded to these on May 12, 2017. (*See* CR, ECF No. 60.)

On June 9, 2017, Martinez-Castillo filed another Amended Motion to Vacate. (*See* CR, ECF No. 62; CV ECF No. 8.) The Government then sought an additional opportunity to answer. On May 16, 2019, this Court issued an order, directing the Government to answer Martinez-Castillo's Amended Motion within 60 days. (*See* CR, ECF No. 64; CV, ECF No. 9.) On July 17, 2019 the Government filed its answer. (*See* CV, ECF No. 11.)

## DISCUSSION

Petitioner claims that there are two reasons why his sentence should be vacated or reduced. First, he claims that an amendment to the USSG was not properly applied during sentencing and that it should be retroactively applied to his sentence. Second, he claims that his immigration status is preventing him from participating in a drug program known as RDAP, which he believes could potentially grant him an early release, and thus his rights are being violated. The Court addresses each argument in turn but begins with a third issue, Petitioner's inability to contest his sentence.

**Claims Barred**

The validity of specific waiver provisions made voluntarily and knowingly within an agreed upon guideline has been consistently confirmed. *United States v. Rosa,* 123 F.3d 94, 97 (2d Cir. 1997); *United States v. Maher,* 108 F.3d 1513, 1531 (2d Cir. 1997); *United States v. Jacobson,* 15 F.3d 19, 22-23 (2d Cir. 1994); *United States v. Salcido-Contreras,* 990 F.2d 51, 53 (2d Cir.1993). Hence, where claims arise in contravention to explicit waiver provisions of plea agreements, those claims are improper and barred from consideration.

Petitioner's claim for a reduced sentence is barred due to his knowing and voluntary waiver of right to make such claims in his plea agreement. Petitioner's plea agreement, which Petitioner signed on June 16, 2016, states "the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section

2255 and/or Section 2241; nor seek a sentence modification pursuant to Title 18, United States Code, Section 3582(c), of any sentence within or below the Stipulated Guidelines Range of 70-87 months' imprisonment." (*See* Plea Agreement, ("PA"), at 4.) This suffices as a waiver of right.

Additionally, during Petitioner's Change of Plea Hearing, which was held on July 14, 2016, the Court asked Petitioner if he "sign[ed] this agreement?" to which he responded affirmatively. In addition, the Court asked Petitioner, "Did you review the agreement when you signed it?" Petitioner again responded affirmatively. The Court then asked if Petitioner "discuss[ed] it with [his] attorney before [he] signed it?" and if he did, did he "fully understand the agreement before [he] signed it?" Petitioner again responded affirmatively to both questions. The Court later specifically asked Petitioner, "Do you understand that you have agreed to waive any and all right to attack your sentence, either on direct appeal or collaterally, or to seek a sentence modification of any sentence within or below the stipulated Guidelines range of 70 to 87 months' imprisonment?" Petitioner responded affirmatively again, thus confirming his knowing and voluntary waiver of these rights pursuant to the plea agreement.

Because Martinez-Castillo's sentence of 58 months was below the Stipulated Guidelines Range of 70 to 87 months, and because he knowingly waived his rights to do so during his Change of Plea Hearing, he is unable to seek relief under 28 U.S.C. § 2255.

**Amendment to 18 U.S.C. § 3582(c)(2)**

Even if Petitioner had not waived his rights as part of his plea agreement, he fails to provide any legal basis for a claim under 18 U.S.C. § 3582(c)(2), which states that "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission…the court may reduce the term of imprisonment." 18 U.S.C. § 3582(c)(2). Petitioner cites U.S.S.G. Amendment 782, which reduced

4

offense levels by two in U.S.S.G. §2D1.1. The effective date of this Amendment was November 1, 2014. Petitioner was sentenced two years after this date, in November 2016. Petitioner's belief that this amendment was not applied to his sentence is incorrect. The base offense level for a 21 U.S.C. § 846 offense involving at least a kilogram of heroin under USSG §2D1.1(c)(5) with Amendment 782 in effect would be 30, the same base offense level actually applied to him. (*See* PSR ¶ 25.) Because Amendment 782 had already been in effect and was considered by the Court during sentencing, 18 U.S.C. § 3582(c)(2) is inapplicable. *U.S. v. Tyner*, 308 Fed. Appx. 245, 248 (10th Cir. 2008). Thus, Petitioners claims premised on this statute are dismissed.

**Participation in RDAP**

Petitioner lastly argues that his constitutional rights were violated because the prison excluded him from participating in RDAP, a drug program offered by the Bureau of Prisons ("BOP") that occasionally allows up to one year of time to be taken off of a defendant's sentence upon completion. Petitioner claims that he is unable to access RDAP due to his immigration status.

The Court finds Petitioner's argument inappropriate for the instant Motion. Petitioner's Motion was filed under 28 U.S.C. § 2255, as a motion to vacate his sentence, not as a writ for *habeas corpus*. Any issues regarding the *execution* of a sentence, as opposed to the *imposition* of a sentence, including eligibility for RDAP, should be filed as a motion for *habeas corpus* relief under 28 U.S.C. § 2241. *Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006) (noting that "execution of a sentence includes matters such as 'the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention, and prison conditions") (quoting *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001)). Here, the BOP's administration of RDAP pertains to its execution, and not the Court's imposition, of a sentence.

Apart from Petitioner's argument being inappropriate for a motion to vacate, even if the motion had been filed as a writ of *habeas corpus*, this Court would not have jurisdiction over it, as it would need to be filed in the Western District of Pennsylvania, the district of the prison in which the Petitioner is currently being held. *See Levine*, 455 F.3d 71.

But even if this Court had proper jurisdiction and this motion was filed as a writ for *habeas corpus*, Petitioner failed to exhaust the administrative remedies related to his RDAP issues. According to the Regional Counsel of the BOP, Petitioner did not exhaust the second or third phases of administrative review. (*See* Government's Letter Dated July 17, 2019, CV ECF No. 11) (reflecting that BOP confirmed that Petitioner did not complete required phases of administrative review). This lack of full exhaustion of administrative remedies is, by itself, substantial enough to deny the claim. *Carmona v. U.S. Bureau of Prisons,* 243 F.3d 629, 634 (2d Cir. 2001).

Similarly, even if Plaintiff filed this motion in the appropriate form and venue, the inability to obtain a reduced sentence through RDAP is unlikely a violation of due process. Early release, such as that which may be achieved through RDAP, is not a liberty interest, as its denial does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Indeed, the denial of early release upon the completion of RDAP has been found to not be a denial of a liberty interest before. *Hickerson v. Willingham*, No. 3:06–cv–777, 2006 WL 3422186 (D.CT. Nov. 28, 2006).

Further, §3621(e)(2)(B), which allows early release through RDAP, "instructs that the BOP 'may,' not that it must, grant early release." *Lopez v. Davis*, 531 U.S. 230, 231 (2001). This language grants the BOP discretion to reduce sentences under §3621(e)(2)(B), even with the satisfaction of its two prerequisites: conviction of a non-violent crime and completion of a drug treatment program. *Id.* This discretion further establishes that exclusion from RDAP does not

implicate a liberty interest. As a result, any claims regarding denial of Petitioner's right to due process as related to RDAP are dismissed.

## CONCLUSION

For the foregoing reasons, Petitioner's motion is DENIED in its entirety. The Clerk of the Court is respectfully directed to enter judgement for the United States and close this case.

Dated:   July 30, 2019
          White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge